**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES KLEINERT,** | |
| *Plaintiff,* | |
| **v.** | No. 24-cv-934 (TSC) |
| **BUREAU OF LAND MANAGEMENT,** | |
| *Defendant.* | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff James Kleinert sued the Bureau of Land Management ("BLM") to compel, under

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the release of records related to federal

actions impacting wild horses and their habitats. *See* Compl. ¶¶ 1, 44, ECF No. 1. The parties

were unable to reach a settlement agreement after BLM produced responsive documents, and

Plaintiff now moves to recover attorneys' fees and costs. *See* Pl.'s Mot. for Atty's Fees ("Pl.'s

Mot."), ECF No. 12. For the reasons that follow, Plaintiff's motion will be DENIED.

**I.     BACKGROUND**

In September 2022, Plaintiff submitted a FOIA request seeking records from various BLM

offices in Wyoming. *See* FOIA Request at 2–5, ECF No. 13-1, Ex. 1. In November 2022, Detty

Crockett, a Government Information Specialist and Privacy Officer for BLM's Wyoming State

Office, acknowledged receipt of Plaintiff's request and identified five field offices with potentially

responsive records. Towers Decl. ¶¶ 1, 6–7, ECF No. 13-2. Two of the offices located responsive

records. The Rock Springs office located a four-page record, which it emailed to Crockett, *id.*

¶¶ 11–12, and the Rawlins office located four records totaling 14 pages ("Rawlins Records"), but

mistakenly failed to send them to Crockett for processing, *see id.* ¶ 16; Warrington Decl. ¶¶ 7–8, ECF No. 13-3.

BLM released its final production to Plaintiff, withholding the four-page Rock Springs record under a FOIA exemption. *See* Compl. ¶ 33. Plaintiff appealed the decision, which the FOIA Appeals Office granted in March 2023. *See* First Appeal Determination at 1–2, ECF No. 13-1, Ex. 10. On remand for further processing, Crockett contacted the field offices again to reinitiate the search, and the Rock Springs office identified three additional records totaling 21 pages that were not initially located because the office had limited its search to staff email accounts. *See* Towers Decl. ¶¶ 19–21. BLM produced the previously withheld four-page record along with the three newly identified records, withholding portions of each under a FOIA exemption. *See id.* ¶¶ 21; Compl. ¶ 39. Plaintiff appealed again in May 2023, but the Appeals Office denied the appeal. *See* Second Appeal Determination, ECF No. 13-1, Ex. 14.

Dissatisfied with BLM's response, Plaintiff sued the agency in April 2024, alleging that it failed "to conduct an adequate search" and "provide . . . all non-exempt records" responsive to his request. Compl. ¶ 1. In August 2024, Plaintiff asked BLM "to conduct a supplemental search" for additional records. Email Exhibits at 2, ECF No. 13-4. BLM declined, explaining that it was already "planning on drafting a declaration" detailing its search process, and that the parties could revisit the question of additional searches once Plaintiff reviewed the declaration. *Id.* at 1; *see* Aug. 7, 2024 Jt. Status Rep. at 1, ECF No. 6. In preparing that declaration, Crockett contacted Kirk Warrington, the Rawlins office's FOIA coordinator, to "verify" that the agency "had received all responsive documents." Warrington Decl. ¶ 10. Upon review, Warrington "discovered a previously overlooked email from" a custodian who had identified the Rawlins Records during the original search, and immediately forwarded the missing records to Crockett. *Id.* ¶¶ 10–11.

In October 2024, BLM produced the Rawlins Records, withholding certain portions under a FOIA exemption and explaining that the "records were not properly transmitted to the FOIA Specialist for processing" in November 2022.  Suppl. Final Determination at 1, ECF No. 13-1, Ex. 15.  Upon receiving the records, Plaintiff elected to conclude the litigation without seeking additional responsive records.  *See* Stotter Decl. ¶ 13, ECF No. 12-4.  Plaintiff then submitted a demand for attorneys' fees in December 2024.  *See* Dec. 17, 2024 Jt. Status Rep. at 1, ECF No. 8.

## II.     LEGAL STANDARD

Under FOIA's fee recovery provision, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. §552(a)(4)(E)(i).  A plaintiff must be both eligible for and entitled to fees.  *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).  A plaintiff has "substantially prevailed" if he "obtained relief" through either: (1) "a judicial order, or an enforceable written agreement or consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the [plaintiff]'s claim is not insubstantial."  *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(4)(E)(ii)).  Under the latter theory, known as the "catalyst theory," the question is whether the "institution and prosecution of the litigation *cause[d]* the agency to release the documents obtained."  *Church of Scientology of California v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981) (emphasis added).  In establishing causation, the timing of the plaintiff's suit and the agency's subsequent release of responsive documents are not dispositive; the plaintiff "must show that prosecution of the action could reasonably be regarded as necessary to obtain the information." *Id.* at 588 (D.C. Cir. 1981) (quoting *Cox v. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979)).

### III.    ANALYSIS

Plaintiff argues he is eligible for attorneys' fees under the catalyst theory because his lawsuit and follow-up requests triggered the discovery and release of the Rawlins Records. *See* Pl.'s Mot. at 8–9; Reply at 6, 10, ECF No. 15. The court disagrees.

The record reflects that the disclosure of the Rawlins Records resulted from "delayed administrative processing," not a change in position prompted by Plaintiff's lawsuit. *Short v. U.S. Army Corps of Eng'rs*, 613 F.Supp.2d 103, 106 (D.D.C. 2009). BLM discovered the records in November 2022—more than a year before Plaintiff filed suit. *See* Warrington Decl. ¶ 7. Warrington avers he inadvertently "neglected to send" them upon receipt, and in 2023 again "mistakenly overlooked" the records "while trying to meet [a] tight deadline." *Id.* ¶¶ 8–9. When Crockett followed up again in August 2024, Warrington realized that he had "previously overlooked" the relevant email and "immediately notified Ms. Crockett and sent her the 14 pages of records contained therein." *Id.* ¶ 10. The nearly two-year delay, while regrettable, was not a matter of agency policy or deliberate decision, but "entirely unintentional human error," which the agency "remedied . . . as soon as [it] discovered it." *Id.* ¶ 11; *see Harvey v. Lynch*, 178 F. Supp. 3d 5, 7–8 (D.D.C. 2016) (finding no "change in position" where the agency's late production reflected administrative error rather than a decision to reverse course).

The parties' email exchange confirms that an agency-initiated review process, not this litigation, was the proximate cause of the records' release. When Plaintiff asked BLM to conduct a supplemental search in August 2024, the agency *denied* the request, explaining that it was already "drafting a declaration" that would "provide an in-depth explanation" of the agency's search process, and that "[s]hould there be any issues after seeing the declaration," the parties could "re-discuss" the possibility of "conducting a different search." Email Exhibits at 1. In preparing that

declaration, Crockett followed up with the Rawlins office to verify receipt of all responsive documents, which prompted Warrington to discover the "overlooked" records.  *See* Warrington Decl. ¶ 10.  That BLM's self-initiated review happened to occur during the pendency of litigation does not transform it into a litigation-caused disclosure.  *See Codrea v. ATF*, 272 F. Supp. 3d 49, 53 (D.D.C. 2017).

While the agency's two-year delay in releasing the Rawlins Records was undoubtedly the product of repeated mistakes, the record nonetheless shows a good-faith effort to respond to Plaintiff's request.  Upon receiving Plaintiff's FOIA request in November 2022, BLM promptly contacted FOIA coordinators across five field offices, conducted two rounds of searching, produced records within the timeframes it committed to, constructively responded to Plaintiff's first administrative appeal, and located and released additional documents on remand.  *See* Towers Decl. ¶¶ 8–23.  This is not a case of agency stonewalling, but one of administrative error, corrected as soon as it came to light.

In sum, BLM's declarations—which are entitled to "a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)—establish that the agency intended to release the Rawlins Records upon their discovery, but inadvertently failed to do so. The record confirms that it was BLM's own internal review, not the threat of an adverse court order, that led to their eventual release.  On these facts, Plaintiff has not met his burden of showing that the lawsuit substantially caused the agency to release the requested records, and he is not eligible for an award of costs.  *See Davis v. Dept. of Just.*, 610 F.3d 750, 752 (D.C. Cir. 2010); *Grand Canyon Tr.*, 947 F.3d at 97–98.

## IV.    CONCLUSION

For the foregoing reasons, the court will DENY Plaintiff's Motion for Attorneys' Fees and

Costs.  ECF No. 12.  A separate order will accompany this Memorandum Opinion.


Date: March 30, 2026


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge